## PRIOR v. DIGGS.

### No. 14,874; October 1, 1892.

31 Pac. 155.

**Sale of Goodwill—Action for Breach.**—Defendant sold to plaintiff the goodwill of his "saddlery, harness, and carriage trimming business," and agreed not to enter a like business in the same place while plaintiff, or anyone deriving title to the goodwill from him, was engaged in such business. Later he engaged in a general merchandise business in that place, and, among other things, sold horse blankets, buggy robes and dusters, whips, and collar pads. Held, in an action for breach of contract, that evidence showing that such articles did not belong to the saddlery and harness business, but were articles of general merchandise, was admissible to prove there was no breach of contract.

**Witness—Expression of Opinion.**—Where a witness states that he "does not consider" or "does not think," etc., such expressions are not expressions of opinion, merely, as witnesses are not required to give their testimony with absolute positiveness.

APPEAL from Superior Court, Yolo County; C. H. Garoutte, Judge.

Action by T. M. Prior against Marshall Diggs for breach of contract. Judgment for defendant. From the judgment and an order denying a motion for a new trial, plaintiff appeals. Affirmed.

J. C. Ball for appellant; F. E. Baker and Clark & Aram for respondent.

BELCHER, C.—The plaintiff commenced this action on November 24, 1888, to recover damages in the sum of $2,000 for the alleged breach of a written contract, which reads as follows:

"Whereas, I, Marshall Diggs, of the county of Yolo, state of California, have this day sold to T. M. Prior, of the same place, the good will of the saddlery, harness, and carriage trimming business lately carried on by me in the town of Woodland, in said county, now, therefore, in consideration of said sale and of the sum of two hundred and twenty-five dol-

lars, gold coin of the United States, to me in hand paid by the said T. M. Prior, I hereby covenant and agree to and with the said T. M. Prior that, so long as the said T. M. Prior, or any person deriving title to the good will of said business from him, shall carry on a like business within said town, I will not, directly or indirectly, either for myself or as the agent or employee of any other person, carry on, or aid in carrying on, at any place within said town of Woodland, the business of saddlery, harness making, or carriage trimming, or the selling of saddles, harness, carriage trimmings, or other articles usually sold, or which I have been accustomed to sell, in connection with said business, or any other business usually carried on in connection therewith or subsidiary thereto. And whereas, from the nature of the case, it would be extremely difficult to fix the actual damage arising from a breach of this contract, now, therefore, it is hereby agreed that the sum of two thousand dollars shall be presumed to be the amount of damage sustained by a breach of this contract, and the said amount is hereby fixed and agreed upon as liquidated damages for such breach. Witness my hand this 17th day of January, A. D. 1883.

"M. DIGGS."

By his answer the defendant denied all the averments of the complaint, and set up numerous defenses. The case was tried before a jury, and the verdict and judgment were in favor of the defendant. The plaintiff moved for a new trial, which was denied, and has appealed from the judgment and order. The Civil Code provides that "the goodwill of a business is the expectation of continued public patronage" (section 992), and that "the goodwill of a business is property, transferable like any other" (section 993). It also provides that "every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind is to that extent void" (section 1673), except that "one who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or a part thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein" (section 1674). Here the goodwill sold was only that "of the saddlery, harness, and carriage trimming business," and the question is, Did the defendant vio-

late his contract by thereafter carrying on "a similar business" while the plaintiff was carrying on "a like business"?

The facts proved and bearing on this question are, in substance, as follows: Prior to his sale to the plaintiff, defendant had been engaged in the saddlery, harness and carriage trimming business for about a year, and, among other things, had kept and sold to his customers "horse blankets, buggy robes and dusters, whips, and collar pads." In June, 1883, he bought in with Freeman & Co. as a partner in a general merchandise store, situated upon the same street and within a few feet from the place where the saddlery business which he had sold to the plaintiff was then being carried on. He remained in business as a member of the firm of Freeman & Co. until October, 1884, when he bought out his partners, and afterward conducted the business at the same place in his own name. His business was principally the sale of hardware, agricultural implements, wagons, carriages, and buggies; but when he went in with Freeman & Co. there were in stock, and for sale, in the store, horse blankets, buggy robes, and dusters, whips, and collar pads, and he afterward kept and sold some of each class of such goods and enumerated articles each year, down to the time of the commencement of this action. In October, 1883, the plaintiff sold and transferred the business, the goodwill of which he had purchased from defendant, to one Barney, but did not assign to him the contract on which this action is based; and in November, 1884, Barney sold and transferred the said business back again to plaintiff. After his purchase from Barney, the plaintiff continuously, up to the time of the trial, carried on in the town of Woodland "the business of saddlery, harness, and carriage trimming, and, in connection therewith, kept for sale, and sold therewith, robes and dusters, horse blankets, whips of all kinds, collars and collar pads, and other articles." It was claimed by the plaintiff in the court below that the sale of horse blankets, buggy robes, etc., was a part of the saddlery and harness business, and that defendant, by selling these articles after he bought in with Freeman & Co., violated his contract, and rendered himself liable for the stipulated damages. On the other hand, the defendant claimed that the articles named were general merchandise, and that the sale of them was not a part of any particular business or trade.

Upon this question the plaintiff's witnesses testified that the sale of the said articles was a part of the saddlery and harness business, and as much a part of it as the sale of any other article sold in connection therewith. The same witnesses, however, testified, on cross-examination, that the articles were sold in connection with other businesses, that they were sold in grocery stores and carriage repositories, and that more of them were kept and sold in general merchandise stores than in harness-shops. One of the witnesses for defendant testified that he had been in business in Woodland for thirty years, and had kept general merchandise for sale; that he did not "consider horse blankets, buggy robes, or lap dusters or collar pads or whips, as belonging to the saddlery, harness, or carriage trimming business"; and that they were recognized as articles of general merchandise. And the defendant testified to the same effect, and, among other things, said: "I don't think they belong to any particular business. They are articles of general merchandise. They are so usually sold in all classes as general merchandise, in dry-goods stores, hardware stores, and especially whips and robes are sold with carriages in carriage repositories"; and that after he bought in with Freeman & Co., in connection with his hardware and agricultural business, he kept a carriage repository, and kept carriages and buggies on hand for sale. Defendant further testified that the plaintiff had every opportunity to know he was selling these articles; that plaintiff was often in his place; that the robes, whips, and blankets were lying in the most prominent places near the door, where people could see them; and that plaintiff made no objection before the commencement of this action. The testimony on both sides as to the sale of the said articles in connection with other classes of business than the saddlery and harness business was objected to by plaintiff, and it is urged that the court erred in admitting it. We see no error in the rulings. The evidence tended to support the defendant's theory, and was admissible for that purpose. It is further urged that the defendant's witnesses only stated that they did not "consider" and did not "think," etc., and that these were expressions of opinion, merely, and hence not sufficient to create a conflict in the evidence. We cannot accede to this view. Witnesses are not required to give their testimony with absolute positiveness: 1

Greenleaf on Evidence, sec. 440; Hoitt v. Moulton, 21 N. H. 588. The witnesses, however, did state positively that the said articles were articles of general merchandise, and, if this was so, they did not belong to any particular trade or business. We think there was a substantial conflict in the evidence upon the question under consideration, and that the verdict and judgment cannot, therefore, be disturbed. In view of what has been said, it would subserve no useful purpose to consider the other questions discussed by counsel. We discover no error which could affect the result, and therefore advise that the judgment and order be affirmed.

We concur: Haynes, C.; Foote, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.